Jerry N. **WOOD**, Appellant,

v.

Rose Mary **WOOD**, Appellee.

No. 71,001.

Court of Appeals of Oklahoma, Division No. I.

June 5, 1990.

George W. Owens, and Robyn Owens, Tulsa, for appellant.

Sam P. Daniel, Jr., Tulsa, for appellee.

## MEMORANDUM OPINION

HUNTER, Vice–Chief Judge:

The parties, who are in their early 50's, were granted a divorce in March, 1988, after 27 years of marriage and had three adult children, living away from home, who were ages 23, 24 and 25 at the time of the divorce.

Appellant and Appellee were high school sweethearts who both attended college and married shortly after Appellee's graduation in 1961. Appellant began a career in business, while Appellee became a mother of their three children and took care of the home. In addition to her duties as a housewife and mother, Appellee also took care of several elderly members of Appellant's family during this time.

The parties provided all three children with education in private schools from preschool through college. In 1978, Appellant became a financial consultant with Shearson Lehman Brothers in Tulsa. With Appellee at home raising the children and actively participating in all school-related activities, Appellant's success as a financial consultant with Shearson Lehman Brothers grew year after year, permitting him to take Appellee and the rest of the family on numerous exotic vacations. Appellant also presented Appellee with gifts of jewelry and fur coats. Appellant was so successful in his business endeavors that he was ranked within the top ten percent (10%) moneymakers in the Shearson Lehman Brothers organization, one of the largest financial services firms in the world.

During this time, the parties became actively involved in the Tulsa social community, and developed prominent and financially successful friends and colleagues. Appellee joined the work force only for a short period of time, working part time in the library at her children's private school. Instead of continuing her education, Appellee chose instead to direct her life to the raising and nurturing of her husband and children.

In 1982, Appellant became romantically involved with another woman and the parties were periodically separated. Upon one reconciliation, Appellant gave Appellee a three-carat diamond ring which he had inherited. At trial, Appellant disputed the gift of the ring and contended it was his personal property which he merely allowed Appellee to wear. Meanwhile, Appellant continued his extra-marital affair. In September, 1986, Appellant filed a petition for divorce on the grounds of incompatibility. Appellee answered and counterclaimed for divorce on the grounds of adultery. An arduous and hotly contested litigation ensued between the parties.

Upon trial of the matter, the trial court awarded Appellant a divorce on the grounds of incompatibility and Appellee a divorce on the grounds of adultery. The parties were each awarded their separate property as set forth in the respective schedules submitted to the court. During the course of this lengthy financially successful union, the parties accumulated substantial personal property in the marital estate. The trial court determined the value of each item where possible, and divided it in kind. Appellant does not challenge the trial court's division of such property, but assesses a greater valuation to the property than does Appellee by using insurance replacement value rather than fair market value. Since Appellant does not specifically challenge the trial court's particular division thereof, we will not set forth with great specificity the details of that division. Appellee was awarded the bulk of the parties' wedding gifts as well as the disputed diamond ring, while Appellant was awarded the personal property that he specifically requested with the exception of the ring.

Appellant was awarded the parties' residence in a historic section of Tulsa valued at approximately $290,000, with an outstanding mortgage of approximately $256,000. Each party was awarded their respective automobiles. Appellant was awarded 500 shares of bank stock, four Shearson Lehman accounts, two life insurance policies, two club memberships, 1986 tax refunds, cemetery plot, computer, original painting, his deferred compensation plan and 60% of his retirement and pension benefits, equaling approximately $112,492,92.

Appellee was awarded $75,000 property division alimony, which figure was arrived at after consideration of Appellant's diminution of two of the parties' bank accounts at the time he filed his petition for divorce and upon discovery of a secret bank account in which Appellant concealed substantial funds used partly to finance loans to his paramour, totalling approximately $13,000. The total award of property to Appellee, including the property division alimony, equalled approximately $99,464.73, according to Appellee's calculations. Appellant assesses Appellee's property division award at $176,841.99, in addition to the $75,000 lump sum award. In addition, Appellee was awarded 40% of Appellant's retirement and pension, limited to the benefits as of July 2, 1988 (the date of vestment) pursuant to a qualified domestic relations order of August 11, 1988. Appellee was also awarded support alimony totalling $507,000 over fifteen (15) years in the following increments: $3,750 per month for 36 months, $3,000 per month for 84 months and $2,000 per month for 60 months. Appellant was ordered to carry Appellee as beneficiary in his declining term life insurance policy with Shearson Lehman to the extent of Appellee's unpaid support alimony in order to protect Appellee's award should Appellant predecease her. Appellee was also awarded approximately 76% of her attorney fees and costs. Appellant was ordered to pay Appellee's income tax liability on the temporary support alimony she received during the pendency of the divorce, as well as the remaining debts of the marriage. According to Appellee's calculations, she received approximately 45% of the marital estate and 40% of Appellant's retirement and pension benefits from the 27-year union.

On appeal, Appellant initially challenges the support alimony and property division

alimony awards and the award of 40% of his retirement benefits as excessive and an abuse of the trial court's discretion. Appellant contends Appellee failed to prove a need sufficient to justify such alimony awards and that the $75,000 lump sum award should be credited toward the support alimony award. He further contends that the support alimony award of $507,000 over fifteen (15) years should be reduced to $2,512 per month (the amount Appellee received as temporary support during the pendency of the divorce) for three to five years.

■ A divorce is an action of equitable cognizance and the trial court is vested with wide discretion in dividing property and awarding alimony. *Kiddie v. Kiddie,* 563 P.2d 139 (Okl.1977). This court will not disturb the trial court's decision regarding property division or alimony absent some abuse of discretion or a finding that the decision is clearly against the weight of the evidence. *Teel v. Teel,* 766 P.2d 994 (Okl.1988). The net marital estate need not be equally divided, but must only be equitably divided to comply with 12 O.S. Supp. 1985, § 1278. *Silverstein v. Silverstein,* 748 P.2d 1004 (Okl.App.1987). In addition, a wife is entitled to a fair and equitable division of property acquired during the marriage. *Isenhower v. Isenhower,* 666 P.2d 238 (Okl.App.1983). The burden of showing that the trial court abused its discretion in adjusting the rights to separate or jointly acquired property is upon the party complaining. *Martin v. Martin,* 206 Okl. 35, 240 P.2d 1057 (1952).

■ In determining what constitutes an equitable division of jointly acquired property, the paramount consideration involves a determination of the extent of each party's rights in the property, and their efforts as contributing factors to acquisition of the property. *Wilhelm v. Wilhelm,* 678 P.2d 727 (Okl.App.1983). The question of need affords no criterion in such determination and personal conduct is material only to the extent that it reflects the existence or non-

existence of the endeavor which contributed to the creation of the marital estate. *Moyers v. Moyers,* 372 P.2d 844 (Okl.1962).

■ The trial court's property division left Appellee with approximately 45% of the marital estate and 40% of Appellant's retirement benefits. The parties began their adult lives together with minimal property and jointly built the sizeable estate over the course of 27 years through both their industries—Appellant, by forging a successful business career, and Appellee, by sacrificing her career to raise their children and to establish a good home and family life for them. We find both parties in this case equally established the marital estate and find no abuse of the trial court's discretion in awarding Appellee approximately 45% of the property and 40% of Appellant's retirement benefits.

■ We further find that the trial court's award of $75,000 alimony in lieu of property to Appellee was not clearly against the weight of the evidence nor an abuse of discretion. Appellant was awarded the parties' residence and Appellee was forced to vacate the premises and seek housing elsewhere. There was much testimony concerning the type of housing available in the neighborhood which Appellee wished to reside. The photographic exhibits of the home Appellee proposed to purchase showed it was quite modest in comparison to her previous living quarters. The $75,000 award compensated Appellee sufficiently to allow her to obtain suitable, but not an extravagant residence. Furthermore, there was testimony that Appellant appropriated monies from the parties' bank accounts at the time he filed the divorce petition and established a secret bank account which he attempted to conceal from consideration by the trial court as part of the marital estate. In consideration of these factors, we find the $75,000 alimony in lieu of property award was justified and we will not disturb that finding.

■ Appellant contends that Appellee failed to prove a need sufficient to justify

the award of support alimony. The need of the party receiving alimony and the ability of the other spouse to pay have long been controlling factors for alimony awards. *Silverstein v. Silverstein,* 748 P.2d 1004 (Okl.App.1987); *Bowman v. Bowman,* 639 P.2d 1257 (Okl.App.1981). While need must be rationally connected to the marriage itself, the party requesting alimony, upon a showing of need, is entitled to receive alimony in a sum commensurate with the mode of living to which she has become accustomed as a wife. *Dowdell v. Dowdell,* 463 P.2d 948 (Okl.1970). The trial court must consider the parties' station in life, their respective conduct, earning capacity, the marital estate and the wife's contribution thereto. *Silverstein v. Silverstein,* supra.

■ In this case, Appellee obtained a college education but forfeited any dreams of a career or future education in order to raise Appellant's children and make a home for their family. Appellee also took care of several of Appellant's relatives in their final years. She greatly assisted Appellant socially and actively participated in school-related and civic functions. The Appellee's chances for gainful employment by which she can live a meaningful existence commensurate with her station in life are not good. She has no job training and a college degree which is over 27 years old. Appellee's needs today were created by a lifestyle which the parties jointly established and her standard of living will be substantially diminished by the alimony award as it stands. The trial court considered all these factors in its assessment of an adequate support alimony award. The trial court carefully considered the voluminous record before it including exhibits containing many financial documents and lengthy inventories of property assessments. The trial court was in the best position to assess an equitable division and did a commendable job, considering the complex evidence before it. We find no abuse of discretion and the award is not clearly against the weight of the evidence.

■ Nor do we find error in the requirement that Appellant carry Appellee as a beneficiary on a declining term life insurance policy he maintains through his employment to the extent of the unpaid support alimony award. This requirement did nothing more than to protect Appellee's future income from Appellant's possible untimely death. The trial court had evidence before it showing the amount of premiums deducted from Appellant's salary by Shearson Lehman and took this figure into consideration at that time. The premiums upon such insurance will diminish over the 15-year period and the requirement that Appellee be named beneficiary is extinguished should she remarry or predecease Appellant. We do not find this requirement contrary to 12 O.S. Supp.1985 § 1278 or that it provides Appellee with a greater alimony award at an unfixed amount. The policy benefits are more than ample to protect Appellant and any future family he may have. Appellee at her age and level of training, has lost her inheritance and must rely totally upon her support alimony for survival. We find no abuse of discretion. *See Yery v. Yery,* 629 P.2d 357 (Okl.1981).

■ Appellant lastly challenges the trial court's award to Appellee of approximately 76% of her attorney fees after hearing on the reasonableness of those fees pursuant to *State ex rel. Burk v. City of Oklahoma City,* 598 P.2d 659 (Okl.1979).

An award of attorney fees is addressed to the sound discretion of the trial court which decision will not be disturbed absent an abuse of discretion. *Primrose v. Primrose,* 663 P.2d 755 (Okl.App.1983). Appellant does not challenge the reasonableness of those fees but merely contends that he should not be required to pay any portion of them. While both parties were granted a divorce each from the other, the record shows that the Appellant exacerbated the litigation and that his conduct throughout the trial served to increase the resulting fees. Appellee was required to initiate seven contempt proceedings against Appellant

in order to enforce court orders. The extensive record in this case shows that nearly every journal entry of the trial court's orders required Appellee to file a motion to settle. Appellee was forced to complete substantial discovery in order to uncover the secret bank account which Appellant concealed and to ascertain Appellant's actual commission income. We find no abuse of discretion in requiring Appellant to pay 76% of the attorney fees which he actively participated in creating. *Harmon v. Harmon,* 770 P.2d 1 (Okl.1983); *Carpenter v. Carpenter,* 657 P.2d 646 (Okl.1983).

 Appellee requests that she be awarded attorney fees for her appeal-related services. Appellee initially filed an application with the trial court for such award, which was denied at that time.

This Court is empowered to assess an additional attorney fee for the purpose of appealing a divorce action. *Jones v. Jones,* 612 P.2d 266 (Okl.1980); *Agent v. Agent,* 604 P.2d 862 (Okl.App.1979). Pursuant to 20 O.S. Supp.1982, § 15.1, a prevailing party may petition this Court for an additional attorney fee for the cost of the appeal. We find the evidence in this case supports Appellee's request and her motion for appellate attorney fees is hereby granted. This case is remanded to the district court for a hearing pursuant to the guidelines of *State ex rel. Burk v. City of Oklahoma City,* supra, for a determination of a proper award of reasonable attorney fees for Appellee's defense of this appeal.

AFFIRMED AND REMANDED.

GARRETT, P.J., and MacGUIGAN, J., concur.